IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | |
|---|---|
| GREAT AMERICAN INSURANCE COMPANY, ) </br> ) </br> Plaintiff ) </br> ) </br> v. ) </br> ) </br> EDWARD SCOTT POTTER, KATHY POTTER, DANLON FARMS, LLC, ) </br> JOHN PUCKETT, JOHN PUCKETT AND HOLLY PUCKETT, d/b/a ) </br> PUCKETT STABLES, ) </br> Defendants and </br> Third-Party Plaintiffs ) </br> </br> PAULETTE T. CHEEK and ) </br> CHARLES E. CHEEK, </br> ) </br> Defendants </br> ) </br> v. </br> ) </br> STEVE LIDDELL, d/b/a SH LIDDELL INSURANCE AGENCY, HOLLY ) </br> LIDDELL, Individually and as agent for SH LIDDELL INSURANCE COMPANY, ) </br> and BARNES EQUINE INSURANCE COMPANY, as substituted for SH ) </br> LIDDELL INSURANCE AGENCY, </br> ) </br> Third-Party Defendants </br> ) | No. 4:04-cv-112 |

# **MEMORANDUM OPINION**

This is a declaratory judgment action brought pursuant to 28 U.S.C. § 2201 in which plaintiff, Great American Insurance Company, seeks a declaration that claims alleged in an underlying lawsuit are not covered by a policy of insurance issued by Great American and that it therefore does not owe the insured the duty to defend and/or indemnify. There is also a third-party complaint in which the third-party plaintiffs seek to recover against the agency which sold the insurance policy under theories of negligence, breach of fiduciary duty, and violations of the Tennessee Consumer Protection Act, T.C.A. § 56-8-104. Currently pending are motions for summary judgment by plaintiff Great American and defendant Barnes Equine Insurance Agency, a defendant which purchased the assets of the agency which initially sold the policy. For the reasons that follow, both motions for summary judgment [Court Files #20, #26] will be denied.

## I.
### *Factual Background*

The following factual allegations are considered in the light most favorable to the non-movants.

Scott and Kathy Potter have owned a horse farm in Bedford County, Tennessee, since 1999. They board their own horses there and from time to time have boarded other people's horses on the farm. In 1999, they first obtained the insurance policy in question issued by Great American through the Liddell Insurance Agency and its agent Holly Liddell. Initially, there was no request to insure any horses located on the property.

Sometime later, John Puckett, a horse trainer, entered into an agreement with the Potters to board and train horses on their property. When the Potters and Mr. Puckett reached this agreement, defendants contend that Kathy Potter contacted Holly Liddell to obtain insurance for the horse boarding and training that Mr. Puckett was to be involved in. Ms. Potter claims that she told Ms. Liddell that Mr. Puckett was training and sometimes boarding horses on their property and that he needed to be added to the policy. Ms. Liddell replied that she would take care of it. The policy is titled under the type of farm, "Horse Boarding and Training." The policy also, under its "General Liability Coverage Declarations Supplement Schedule," identifies "Stables-Training/Breeding/Racing" as one classification of anticipated uses.

One of the horses brought to the property was named "The Lady Doc," which was owned by Paulette and Charles Cheek and had been purchased for

3

$100,000.  While the horse was in Puckett's care and on the Potters' property, it became injured and lost a hoof and thereafter had to be euthanized.  On August 24, 2004, the Cheeks filed the underlying lawsuit in this court against the Potters and Puckett, alleging bailment, negligence, and breach of contract theories arising from the loss of the horse.  That underlying lawsuit, Civil Action No. 4:04-cv-73, was settled between the parties.

Great American, on December 13, 2004, filed the instant lawsuit for declaratory judgment seeking a declaration that it had no duty to defend and/or indemnify any of the defendants with regard to the underlying lawsuit.  The third-party defendants then filed a third-party complaint against Holly Liddell, the Liddell Insurance Agency, and the Barnes Equine Insurance Agency, which had later purchased the assets of the Liddell agency.

II.

***The Insurance Policy in Question***

The policy in question is titled under the type of farm, "Horse Boarding and Trading."  The policy also identifies "Stables-Training/Breeding/Racing" as one use of the property.  The policy provides that Great American "will pay those sums that the 'insured' becomes legally obligated to pay as damages because of 'bodily

4

injury' or 'property damage' to which this insurance applies." According to the policy, Great American has "no duty to defend any 'insured' against a 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply."

The policy also contains the following exclusion:

Damage to Property

　　Property Damage to:

　　　　(3) Property loaned to you;

　　　　(4) Personal property in your care, custody or control.

Property damage is defined in the policy as

　　(a)　Physical injury to tangible property, including all resulting loss of use of that property;  or

　　(b)　Loss of use of tangible property that is not physically injured.

Finally, the policy provides in its "Farm Property Coverage Form, AP 72 15":

　　6.　Additional Coverage - Personal Property of Others.  We will pay up to $2,500 for loss or damage to personal property of others in your care, custody, or control.

5

III.

*The Purchase of Liddell's Assets*

On December 31, 2003, Steve Liddell, d/b/a SH Liddell Insurance Agency, sold that business to Joseph L. Barnes for a sales price of $334,331.34. The Business Purchase Agreement sets forth that all of the business, existing and potential, of SH Liddell Insurance Agency would be sold to the purchaser. A condition of the purchase was that the purchaser would employ the seller's daughter, Holly Liddell, and enter into an employment contract with her. The contract further included a confidentiality and non-competition covenant. Following the purchase, the Liddell Insurance Agency ceased to exist. The employment contract for Holly Liddell identifies her as an independent contractor.

The agreement recites further that the retention of Holly Liddell was an essential part of the purchase of the insurance agency and that by entering into the agreement, this would ensure "continuing the operation of the company purchased." Barnes contends that the purchase was of assets only and did not include an express or implied assumption of the liabilities of Steve Liddell or the Liddell agency.

IV.

*Summary Judgment Standards*

Pursuant to Rule 56, summary judgment shall be rendered when requested if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. It is the burden of the party seeking summary judgment to show the court that, under uncontradicted facts, the moving party is entitled to judgment as a matter of law. Summary judgment is intended to provide a quick, inexpensive means of resolving issues as to which there is no dispute regarding the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). In assessing the validity of a summary judgment motion, the court views the pleadings, depositions, answers to interrogatories, admissions, and competent affidavits in a light most favorable to the opponent of the motion. However, an opponent to a motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion,

against a party who fails to make a showing sufficient to establish the existence of an essential element of that party's case, and on which the party will bear the burden of proof at trial. *Catrett*, 477 U.S. at 322.

V.

***The Duty to Defend***

An insurance company's duty to defend its insured is largely determined by the allegations in the complaint filed against the insured. *St. Paul Fire & Marine Ins. Co. v. Torpoco*, 879 S.W.2d 831, 835 (Tenn. 1994). While the duty to defend depends solely on the facts alleged in the complaint, the duty to indemnify ultimately depends on the true facts. *Id.* at 833. The applicable rule is as follows:

> It is accepted in the overwhelming majority of jurisdictions that the obligation of a liability insurance company to defend an action brought against the insured by a third party is to be determined solely by the allegations contained in the complaint in that action. ... Accordingly, if the allegations ... are within the risk insured against and there is a potential basis for recovery, then [the insurer] must defend ... , regardless of the actual fact or the ultimate ground on which ... liability to the injured party may be predicated. ... In any event, the pleading test for determination of the duty to defend is based exclusively on the facts as alleged rather than the facts as they actually are. ...

*Id.* at 835.

Even though the general rule is that the duty to defend depends largely upon the allegations of the complaint, if there is doubt as to whether the complaint states a cause of action within the coverage of liability of the policy sufficient to compel the insured to defend, those doubts will be resolved in favor of the insured. *Dempster Bros., Inc. v. U.S. Fidelity & Guaranty Co.*, 388 S.W.2d 155, 156 (Tenn. Ct. App. 1964).

Initially, the court notes that the policy at issue is identified on its face as insurance for a horse boarding and training farm. In addition, on the declarations page, the insurance is identified as for training, breeding and racing stables. Moreover, if the policy were as limited as Great American insists, then the addition of John Puckett to the policy would apparently have had no meaning because all the personal property insured under the policy belonged to the Potters. Under the circumstances, it cannot be said that on the face of the complaint in the underlying lawsuit there was no doubt that there were no claims within the coverage of the policy. I cannot conclude at this point that Great American had no duty to defend the underlying lawsuit.

## VI.

### *Tennessee Law with respect to Successor Liability*

When one company transfers some or all of its assets to another company, the successor is not liable for the debts of the predecessor except when:

    (1)    The purchaser expressly or impliedly agrees to assume such debts;

    (2)    The transaction amounts to a consolidation or merger of a seller and purchaser;

    (3)    The purchasing corporation is merely a continuation of the selling corporation; or

    (4)    The transaction is entered into fraudulently in order to escape liability for such debts.

A fifth exception, sometimes incorporated, is the absence of adequate consideration for the sale or transfer. *Hopewell Baptist Church v. Southeast Window Mfg. Co., LLC*, 2001 WL 708850 (Tenn. Ct. App. June 25, 2001); *Gas Plus of Anderson County, Inc. v. Arwood*, 1994 WL 46729 (Tenn. Ct. App. Aug. 30, 1994).

In this case, the third-party plaintiffs contend that the Barnes Equine Insurance Agency was merely a continuation of Liddell Insurance Agency. The Liddell Insurance Agency ceased to exist. All of its business and potential business was passed to Barnes. In addition, most importantly, as part of the agreement,

Barnes hired Holly Liddell who would serve as the agent and an independent contractor for Barnes and that this would ensure "continuing the operation of the company purchased." Under the circumstances, questions of material fact remain with respect to whether the Barnes Equine Insurance Agency was a continuation of the Liddell Insurance Agency.

VII.

*Conclusion*

In light of the foregoing, plaintiff Great American Insurance Company's motion for summary judgment [Court File #20] will be denied, and Barnes Equine Insurance Agency's motion for summary judgment [Court File #26] will also be denied.

Order accordingly.

*s/ James H. Jarvis*
UNITED STATES DISTRICT JUDGE
